UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DERRICK DUPAR, JR.,

                Plaintiff,

v.

TROY A. PINGEL, JOSEPH D. BEAHM, NICHOLAS J. WODAK, JESSE J. JONES, JOHN W. BIRDYSHAW, CATHY L. BARKHURST, TYLOR J. RODENKIRCH, JASON A. ROSENTHAL, and KYLE K. TRITT,

                Defendants.

Case No. 21-CV-1058-JPS

ORDER

Plaintiff Derrick Dupar, Jr., an inmate confined at Green Bay Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

1.     MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On September 15, 2021, Magistrate Judge William E. Duffin ordered Plaintiff to pay an initial partial filing fee of $16.66. ECF No. 7. On September 17, 2021, the case was reassigned to this Court. Plaintiff paid the initial partial filing fee on September 28, 2021. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 4. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.   SCREENING THE COMPLAINT

   2.1   Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

On November 29, 2018, Plaintiff was housed in the Restrictive Housing Unit at Waupun Correctional Institution. ECF No. 1. at 3. At approximately 8:05 a.m., Defendant Troy A. Pingel ("Pingel") escorted Plaintiff back to his cell from the shower stall. *Id.* When approaching the cell, they saw Defendant Jason A. Rosenthal ("Rosenthal") performing a cell search. *Id.* Rosenthal was throwing Plaintiff's food from his breakfast tray on the floor outside of his cell. *Id.* Plaintiff asked Rosenthal why he took the breakfast tray and why he was putting it in the hallway. *Id.* at 4. Rosenthal told Plaintiff, with a smirk on his face, that Plaintiff already ate his tray. *Id.* Rosenthal, without any justification, then told Plaintiff he would not get out of segregation. *Id.* Once Plaintiff was cuffed and tethered to his cell door, Pingel put his hands on Plaintiff's shoulder and pushed Plaintiff inside his cell. *Id.* Plaintiff responded, "Don't put your fucking hands on me. I'm not refusing to enter my cell and I'm walking in my cell." *Id.*

After Plaintiff's cell door closed, he kept his hands in the trap and asked to speak with the White Shirt (the Captain and/or Lieutenant). Pingel yelled at Plaintiff, "Give me my fucking cuffs, you can keep the teether." *Id.* Pingel made additional comments, such as, "I swear I'll break your wrist," while tugging on the teether attached to Plaintiff's wrist and causing him pain. *Id.* at 4–5. After about five minutes, Pingel called for assistance. *Id.* at 5. Plaintiff then informed Defendant Joseph D. Beahm ("Beahm") that Rosenthal took his tray. *Id.* Beahm then rehandcuffed Plaintiff's hands. *Id.* Plaintiff's cell reopened and Plaintiff was directed to stay kneeling so that Rosenthal could apply leg restraints. *Id.* Plaintiff stated, "This is bullshit." *Id.* Defendant John W. Birdyshaw ("Birdyshaw") told Plaintiff to keep his head facing forward and Plaintiff complied. *Id.* at 5–6.

Birdyshaw and Defendant Nicholas J. Wodak ("Wodak") slammed Plaintiff's head on the wall with an extreme amount of force for no reason. *Id.* at 6. Birdyshaw and Wodak said in a low tone, "Nigger I should kill you." *Id.* Wodak then grabbed Plaintiff's neck and squeezed it with force. *Id.* Both officers tried to slam Plaintiff's head on the wall. *Id.* The officers then dragged him backwards while holding him in a chokehold, digging their fingers into Plaintiff's neck, and made it difficult for him to breath. *Id.*

Defendant Kyle K. Tritt ("Tritt"), a supervisor, arrived and saw all of this happening. *Id.* Defendants Tritt, Jesse J. Jones ("Jones"), Rosenthal, Beahm, Tylor J. Rodenkirch ("Rodenkirch"), and Cathy L. Barkhurst ("Barkhurst") did nothing to intervene and stop the unnecessary force. *Id.* at 7. Plaintiff did not resist at any time during this incident. *Id.* After the excessive force incident, they all performed an unlawful strip search of Plaintiff and cut his clothing off, fondled his penis and genitals, and used their hands to check his anus without medical staff assistance. *Id.*

The excessive force caused Plaintiff physical injuries and he received medical treatment for whiplash. *Id.* at 8. Plaintiff continues to suffer neck pain and emotional distress as a result of the alleged incidents. *Id.*

### 2.3 Analysis

First, Plaintiff may proceed on Eighth Amendment excessive force claims against Pingel, Birdyshaw, and Wodak. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7).

"In conducting this inquiry, a court must examine a variety of factors, including 'the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner.' " *Id.* With regard to the last factor, "[t]he use of *de minimis* force, so long as it 'is not a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Hudson*, 503 U.S. at 9–10). When the force is more than *de minimis*, however, the primary inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 6. Here, Plaintiff sufficiently alleges facts to state a claim for excessive force against Pingel, Birdyshaw, and

Wodak for subjecting him to physical force with no justifiable penological reason.

Second, Plaintiff may proceed on Eighth Amendment failure to intervene claims against Beahm, Jones, Barkhurst, Rodenkirch, Rosenthal, and Tritt. A prison official may be liable for the failure to intervene if he knew about a constitutional violation and had the ability to intervene, but failed to do so "with deliberate or reckless disregard for the plaintiff's constitutional rights." *Koutnik v. Brown*, 351 F. Supp. 2d 871, 876 (W.D. Wis. 2004) (citing *Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004)). Given that Plaintiff alleges that these defendants stood by and failed to protect Plaintiff from the excessive force used upon him, it is reasonable, at this early stage, to infer that these defendants acted with deliberate indifference to Plaintiff's constitutional rights. As such, the Court will allow Plaintiff to proceed on a failure to intervene claim against Beahm, Jones, Barkhurst, Rodenkirch, Rosenthal, and Tritt.

Finally, Plaintiff may proceed on Fourth Amendment and Eighth Amendment claims against Pingel, Birdyshaw, Wodak, Beahm, Jones, Barkhurst, Rodenkirch, Rosenthal, and Tritt for an illegal strip search. The Eighth Amendment safeguards prisoners against searches that correctional officers subjectively intend as a form of punishment. *Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020). A strip search of a prisoner violates the Eighth Amendment if its purpose is "maliciously motivated, unrelated to institutional security, and hence totally without penological justification." *Chatman v. Gossett*, 766 F. App'x 362, 364 (7th Cir. 2019) (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)). A strip search is penologically justified when it is reasonably related to finding contraband that threatens the safety and security of the prison. *Id.* (citing *Peckham v. Wis. Dep't of Corr.*,

141 F.3d 694, 695, 697 (7th Cir. 1998)); *Del Raine v. Williford*, 32 F.3d 1024, 1029, 1041 (7th Cir. 1994)).

The Eighth Amendment focuses on the defendants' subjective state of mind. *Henry*, 969 F.3d at 781. But the Fourth Amendment focuses on objective reasonableness, and thus "a defendant's subjective state of mind is irrelevant to a court's Fourth Amendment analysis." *Id.* "The Fourth Amendment thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id.* When evaluating a prisoner's claim involving a strip search under the Fourth Amendment, a court "must assess that search for its reasonableness, considering 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.' " *Id.* at 779 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Here, Plaintiff sufficiently alleges facts that these defendants participated in an illegal strip search in violation of his Eighth and Fourth Amendment rights. The Court notes that Plaintiff has provided no facts as to each defendant's specific role in the alleged strip search. However, the Court finds Plaintiff's general allegation that these defendants all participated in the search to be sufficient to proceed at this early stage.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment excessive force against Pingel, Birdyshaw, and Wodak;

**Claim Two:** Eighth Amendment failure to intervene against Beahm, Jones, Barkhurst, Rodenkirch, Rosenthal, and Tritt;

**Claim Three:** Eighth Amendment illegal strip search against Pingel, Birdyshaw, Wodak, Beahm, Jones, Barkhurst, Rodenkirch, Rosenthal, and Tritt; and

**Claim Four:** Fourth Amendment illegal strip search against Pingel, Birdyshaw, Wodak, Beahm, Jones, Barkhurst, Rodenkirch, Rosenthal, and Tritt.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 4, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants Pingel, Beahm, Wodak, Jones, Birdyshaw, Barkhurst, Rodenkirch, Rosenthal, and Tritt;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $333.34 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust

account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 24th day of June, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.