# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DERRICK DUPAR, JR.,

               Plaintiff,

v.

TROY A. PINGEL, NICHOLAS J.
WODACK, and JOHN W.
BIRDYSHAW,

               Defendants.

Case No. 21-CV-1058-JPS

## ORDER

      Plaintiff Derrick Dupar, Jr., who is currently incarcerated, filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On June 24, 2022, the Court screened the complaint and allowed Plaintiff to proceed on the following four claims: (1) Eighth Amendment excessive force against Defendants Troy A. Pingel ("Pingel"), John W. Birdyshaw ("Birdyshaw"), and Nicholas J. Wodack ("Wodack"); (2) Eighth Amendment failure to intervene against Defendants Joseph D. Beahm, Jesse J. Jones, Cathy L. Barkhurst, Tylor J. Rodenkirch, Jason A. Rosenthal, and Kyle K. Tritt; (3) Eighth Amendment illegal strip search against Defendants Pingel, Birdyshaw, Wodack, Beahm, Jones, Barkhurst, Rodenkirch, Rosenthal, and Tritt; and (4) Fourth Amendment illegal strip search against Defendants Pingel, Birdyshaw, Wodack, Beahm, Jones, Barkhurst, Rodenkirch, Rosenthal, and Tritt. ECF No. 12 at 8. On February 8, 2023, the Court granted Defendants' partial motion for summary judgment based on the failure to exhaust administrative remedies. ECF No. 35. The Court dismissed without prejudice Plaintiff's Eighth Amendment failure to intervene, Eighth

Amendment illegal strip search, and Fourth Amendment illegal strip search claims; the only claim currently remaining is Plaintiff's Eighth Amendment claim against Defendants Pingel, Birdyshaw, and Wodack for excessive force. *Id.* at 11–12.

On March 18, 2024, Defendants filed a motion for summary judgment, ECF No. 52, along with a motion to seal Exhibits 1014 and 1015, ECF No. 55. Plaintiff filed a brief in opposition to summary judgment on April 17, 2024, ECF No. 62, and on May 1, 2024, Defendants filed a reply brief, ECF No. 73. The motion for summary judgment is therefore fully briefed and ready for disposition. For the reasons explained below, the Court will grant Defendants' motion for summary judgment, dismiss Plaintiff's Eighth Amendment excessive force claim with prejudice, and dismiss this case.

As a preliminary matter, the Court will grant Defendants' motion to restrict, ECF No. 55. Under General Local Rule 79(d), "[a]ny motion to restrict access or seal must be supported by sufficient facts demonstrating good cause for withholding the document or material from the public record." Gen. L.R. 79(d)(3). "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). This presumption supports public confidence in the judiciary by enabling oversight and facilitating the understanding of judicial decisions. *See Gonzales v. Home Nursery Inc.*, No. 14-cv-1140-MJR-DGW, 2016 WL 6705447, at *1 (S.D. Ill. Sept. 22, 2016) (citing *Goessel v. Boley Int'l, Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013)).

Public interest in the judicial process, however, can be overridden if the movant demonstrates "good cause for sealing a part or the whole of the record[.]" *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir. 1999). The Seventh Circuit has "insisted that litigation [is to] be conducted in public to the maximum extent consistent with respecting trade secrets, the identities of undercover agents, and other facts that should be held in confidence." *Hicklin Eng'g, L.C. v. Bartell*, 439 F. 3d 346, 348 (7th Cir. 2006), abrogated on other grounds by *RTP LLC v. Orix Real Estate Capital, Inc.,* 827 F.3d 689, 692 (7th Cir. 2016). Thus, "[e]ven in cases involving substantial countervailing privacy interests such as state secrets, trade secrets, and attorney-client privilege, courts have opted for redacting instead of sealing the order or opinion." *Mitze v. Saul*, 968 F.3d 689, 692 (7th Cir. 2020).

Here, it is not entirely clear what relief Defendants seek; they filed the motion as a motion to restrict but the document itself seeks instead to seal Exhibit 1014 (Principles of Subject Control Training Manual) and Exhibit 1015 (WCI DAI Policy 306.07.01 - Use of Force). *See* ECF No. 55. Defendants provide no legal authority to clarify the relief they seek and how they meet that standard. Defendants merely explain that these exhibits "contain confidential security information pertaining to trained use of force techniques and detail use of force situations." *Id.* Plaintiff does not oppose Defendants' motion.

The Court will grant Defendants' motion to *restrict* the documents to case participants and attorneys of record; Defendants have not met the high burden necessary to seal the documents entirely. The Court notes that Defendants' motion is lacking in detail as to specifically why these documents must be sealed and do not explain why the entire documents

must be restricted as opposed to only certain confidential portions. However, the Court is mindful of the unique security concerns in the prison context and the need for prison officials to maintain a safe environment. With that concern in mind, and given Plaintiff's lack of opposition, the Court will therefore grant Defendants' motion to restrict.

## 1. LEGAL STANDARD — SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. FACTUAL BACKGROUND

Along with their summary judgment motions, Defendants submitted proposed findings of fact ("DPFF"). ECF No. 54. Plaintiff responded to these facts and provided his own proposed findings of fact ("PPFF"). ECF No. 63. Defendants filed a response to Plaintiff's proposed findings of fact. ECF No. 74. Additionally, the parties provide nine videos

depicting the incident at hand. ECF Nos. 45-2, 66.[1] The parties largely dispute how the video should be interpreted. The Court has reviewed all video footage and finds that it clearly and unambiguously shows the events material to Plaintiff's excessive force claim. As such, the Court will find as fact what is depicted in the video from the point Defendants approach Plaintiff's cell until his strip search. *See Williams v. Norfolk S. Corp.*, 919 F.3d 469, 471 (7th Cir. 2019) (*citing Scott v. Harris*, 550 U.S. 372, 380 (2007)) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record [such as video evidence], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (courts do not credit party's version of events where the party's "story is 'blatantly contradicted' by the video such that no reasonable jury could believe it"). As such, the Court recites the following relevant facts to its summary judgment decision.

Plaintiff was an inmate confined within the Wisconsin Department of Corrections and incarcerated at Waupun Correctional Institution ("WCI") at the time relevant to the claims of this lawsuit. He was incarcerated at WCI from May 7, 2015 until October 28, 2021. DPFF 1. Plaintiff transferred to GBCI on October 28, 2021, and remained incarcerated at this location at the time of the summary judgment filing. DPFF 2. Defendant Pingel was employed as a Correctional Officer at New Lisbon Correctional Institution at all times relevant to this lawsuit. On November 29, 2018, he was working a six-week rotation at WCI due to staff

---

[1]Pingel and Officer Jason Rosenthal were not wearing body cameras as required by DAI Policy 306.16.01. As such, the initial encounter and contact with these staff members was not recorded. PPFF 20. The Court does not, however, find this issue to be material to summary judgment.

shortages at the institution. DPFF 3. Defendants Birdyshaw and Wodack were employed as correctional officers at WCI at all times relevant to this lawsuit. DPFF 4.

Principles of Subject Control ("POSC") is a system of verbalization skills coupled with physical alternatives designed to enhance safety and security for all institutional staff and inmates. POSC provides correctional personnel with the trained standard for the use of force in a correctional setting. DPFF 5.[2] DAI Policy 306.07.01 – Use of Force is a division wide policy on the use of force in an institutional setting. As correctional officers with the DOC, Pingel, Birdyshaw, and Wodack have received mandatory training on POSC and are familiar with the procedures outlined in DAI policies regarding use of force. DPFF 6.

On November 29, 2018, staff members conducted a cell extraction of Plaintiff. Defendants describe the cell extraction as due to Plaintiff refusing to comply with staff directives and for verbal threats to staff and safety. DPFF 8. Plaintiff describes it as a "so-called cell extraction" because Officer Rosenthal (not a defendant) deprived Plaintiff of a breakfast tray and threated him and because Pingel physically assaulted him. Pl. Response DPFF 8, ECF No. 63. Plaintiff provides that he was rapping a song by "Lil Boosie Bad Ass" during the encounter. Pl. Decl. ¶ 12, ECF No. 67. Defendants describe Plaintiff's speaking as verbal threats, such as: "I'm gonna get you…" and "Y'all [expletive] gonna pay for that….kids…." ECF No. 73 at 2. In listening to the video evidence, it is not entirely clear what

---

[2]Plaintiff purportedly disputes this fact by arguing that Defendants were not allowed to use this type of training. This improper argument does not address Defendants' assertion of fact as required by Rule 56(C). As such, the Court considers this fact undisputed for the purpose of summary judgment. *See* Fed. R. Civ. P. 56(e)(2). The Court will similarly consider as undisputed any of Plaintiff's purported disputes that do not properly address Defendants' assertions.

Plaintiff is saying during this encounter. However, Plaintiff's exact language is immaterial for the purposes of summary judgment. What is important, and the Court finds based on the video evidence, is that a reasonable prison official could have interpreted Plaintiff's comments as threats.

Defendants provide that during restraint placement, Plaintiff turned his head towards Birdyshaw on more than one occasion, which was a threat to both staff and Plaintiff. DPFF 9. Plaintiff disputes that he turned his head. Pl. Response DPFF 9. The video evidence shows Plaintiff moving his head and a prison official warning Plaintiff to stop moving his head. Exhibit 1007 at 1:05, ECF No. 45-2. The video shows Plaintiff moving his head again, *Id.* at 1:09.

Birdyshaw provides that, upon perceiving the threat of Plaintiff moving his head, he stabilized Plaintiff's head to the wall by using a trained technique known as wall stabilization. DPFF 10. Defendants describe a wall stabilization as a technique that places a subject against a wall or other vertical surface to safely control a threatening situation. *Id.* Defendants further describe the technique not as a forceful impact but rather a controlled motion where the inmate's head is secured against the wall to prevent harm to all involved. *Id.* In contrast, Plaintiff describes the situation as Defendants using the instruction to stay facing forward as a pretext to push Plaintiff's head into the wall. Pl. Response DPFF 10. Plaintiff avers that his head clearly made contact with the wall and that Wodack or Birdyshaw had one hand around Plaintiff's neck and was squeezing and digging his fingers into Plaintiff's neck. *Id.* The video supports Defendants' version and does not show Plaintiff's head was slammed into the wall. *Compare* Exhibit 1011 at 2:20-2:25 *with* Pl. Decl. ¶ 13, ECF No. 67.

In removing Plaintiff from his cell, Wodack utilized a trained technique known as a "beneath the jaw pressure point compliance hold" that requires staff to secure the subject's head (encircling the head, staff member's dominant hand secure the face, reaction hand secures the chin, bring the subject's head to the staff member's center, take out the slack, stabilize), the dominant hand hooks the subject's jaw apply pressure, then releases pressure as appropriate. DPFF 11. Plaintiff disputes whether this hold was justified; however, he does not dispute that Wodack applied this technique or suggest that Wodack applied it incorrectly. Pl. Resp. DPFF 11. Defendants maintain that they did not make any threatening statements towards Plaintiff. DPFF 13. Plaintiff maintains that Pingel said "I'll break your wrist" and that either Birdyshaw or Wodack said, "[N-word] I'll kill you" through their teeth and making the statement inaudible. The videos do not support Plaintiff's version that Birdyshaw or Wodack verbally threatened him. Plaintiff informed staff during this hold that he could not breath and the officers responded, "You can talk so you can breathe." PPFF 24.

Plaintiff was then assisted to his feet and was escorted backwards to a strip search cell. Wodack continued to maintain control over Plaintiff's head while he was escorted backwards; Pingel secured his right side and Officer Jones secured his left side. DPFF 12.[3] Following the strip search, Plaintiff was offered medical attention, but he refused. DPFF 15. Plaintiff avers that, although he was injured, he refused medical treatment at the

---

[3]The video evidence depicts the strip search in detail. The Court previously dismissed the illegal strip search claims, ECF No. 35, and Plaintiff provides no allegations of excessive force during the strip search. As such, the Court does not describe this part of the incident in detail.

time because he did not want to deal with Defendants any longer. Pl. Response, DPFF 15.

3.    **ANALYSIS**

Defendants' motion for summary judgment seeks dismissal of the only remaining claim in the case—the excessive force claim against Pingel, Birdyshaw, and Wodack. ECF No. 53. Defendants first argue that they are entitled to summary judgment because the undisputed evidence demonstrates that the officers used appropriate hold techniques with only a de minimus amount of force. *Id.* at 4. Alternatively, Defendants argue they are entitled to qualified immunity because, under Seventh Circuit precedent, it is nearly beyond debate that the circumstances here cannot support an excessive force claim. *Id.* at 10. As discussed below, the Court grants Defendants' motion for summary judgment on the merits and finds that no reasonable juror could find excessive force based on the undisputed facts.

### 3.1    Legal Standard—Eighth Amendment Excessive Force

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When a correctional officer is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). The factors relevant to this determination include: (1) why the force was needed; (2) how much force was used; (3) the extent of the injury inflicted; (4) whether Defendants perceived a threat to the safety of staff and prisoners; and (5) whether efforts were made to temper the severity of the force. *Whitley v. Albers*, 475 U.S. 320, 321 (1986).

Defendants rely on *Boyd v. Pollard*, 621 F. App'x 352 (7th Cir. 2015). In *Boyd*, the plaintiff alleged that guards used excessive force during a cell extraction when they body-slammed him onto a concrete floor, placed him in a chokehold, and hit him in the face and head. *Id*. at 354. The defendants denied these allegations and a video confirmed most of the defendant's account, except for brief times when the plaintiff was out of the camera's view. *Id*. The Seventh Circuit recognized that certain portions of the video were inconclusive and that the parties had presented different versions of the events. *Id*. But it nonetheless determined that "no juror who viewed the video could reasonably conclude—given the professional behavior of [the defendants] and minor injury sustained by [the plaintiff]—that the guards, when outside the camera's view, attacked [the plaintiff]." *Id*. at 356.

### 3.2    Analysis

Applying the excessive force factors, the Court finds there is no evidence to support a reasonable finding by a trier of fact that Defendants acted with malicious intent to harm Plaintiff. First, the Court quickly disposes of the claim against Pingel because Plaintiff's own allegations do not show that Pingel used excessive force. Defendants provide that "Pingel was not involved in the application of restraints, nor did he have any physical contact with [Plaintiff] during this cell extraction and escort." DPFF 14. Plaintiff purports to dispute this fact by stating that Pingel escorted him to the shower, was present the entire time, and was not wearing a body camera in violation of policy. This response does not address Defendants' assertion, and none of Plaintiff's own proposed findings of fact provide that Pingel used any force against Plaintiff. Plaintiff's brief in opposition argues that Pingel "assaulted" Plaintiff, ECF No. 62 at 4, but Plaintiff's own declaration provides only that Pingel shoved

Plaintiff into his cell. ECF No. 64 ¶ 7. Shoving a prisoner without provocation, while inappropriate, is a de minimis use of force that does not violate the constitution. *See, e.g.*, *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (finding the "simple act of shoving" qualified as de minimus use of force that does not constitute cruel and unusual punishment), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). As such, based on the undisputed facts, the Court finds that no reasonable juror could find that Pingel used excessive force against Plaintiff. The Court will therefore grant summary judgment as to Pingel.

In regard to Birdyshaw and Wodack, the Court acknowledges this is a much closer question and analyzes the excessive force factors. The questions of why the force was needed and whether Defendants perceived a threat to the safety of staff and prisoner are related. *See Cooper v. Betancourt*, No. 21-CV-727-SLC, 2023 WL 6314644, at *10 (W.D. Wis. Sept. 28, 2023). Using Plaintiff's own version of events, Birdyshaw and Wodack arrived at Plaintiff's cell after the interaction with Rosenthal and Pingel. *See* ECF No. 64 ¶ 10. Birdyshaw provides that he received a call over the radio for assistance because Plaintiff had pulled one of his hands inside the cell and was still tethered to the door by his other hand. *Id.* ¶ 7. As such, whether it was a "so-called" cell extraction for a fabricated reason is immaterial to what Birdyshaw and Wodack knew when their interaction with Plaintiff began; nothing in the record shows that they had any reason to disbelieve what other officers relayed about Plaintiff's behavior. A reasonable fact finder therefore would not fault Birdyshaw and Wodack for approaching Plaintiff with the mindset that he was refusing orders from other staff.

Plaintiff disputes that he was moving his head and disobeying the officers' comments; however, the video evidence contradicts Plaintiff's version of events. The Court acknowledges that Plaintiff's head movements were slight and may have in actuality imposed little risk to the officers' safety. However, prison officials are "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Defendants describe an inmate turning his head as aggressive behavior because it is a sign that he may assault staff by spitting, biting, head-butting, hitting, or kicking the staff member. *See* ECF No. 57 ¶ 11. When an inmate turns his head towards staff, officers are trained to use specific techniques to secure that inmate's body and head to avoid injury. *See id.* ¶ 12. The Court therefore finds that Plaintiff's movements, when viewed objectively, allowed the reasonable inference that he was disobeying orders and posed a threat to Birdyshaw, Wodack, and others. As such, the Court finds that the first and fourth factors weigh against a finding of excessive force.

As to the amount of force used, the Court finds that the video does not show that Birdyshaw and Wodack used a disproportionate amount of force during the cell extraction. The undisputed facts show that Birdyshaw and Wodack used trained techniques in applying the wall stabilization and "beneath the jaw pressure point compliance hold." The video evidence does not support Plaintiff's contention that his head was slammed into the wall. While the compliance hold during the walk to the strip cell was likely extremely uncomfortable and may have caused some pain, the record does not support that it was a disproportionate amount of force given Plaintiff's behavior. Although Plaintiff suggests that Defendants used more force than necessary, moving inmates around a prison and "securing them as they

physically resist is not an exact science," and the record indicates that Birdyshaw's and Wodack's use of force was reasonably tailored to that end. *See Huff v. Tabler*, No. 3:18-CV-122-JD-MGG, 2019 WL 3499494, at *3 (N.D. Ind. July 31, 2019). Although Birdyshaw and Wodack's actions may have caused Plaintiff pain, the record does not support a finding that their actions were malicious or intended to inflict pain. As such, the Court finds that the second factor weighs against a finding of excessive force.

As to Plaintiff's injuries, the parties dispute the extent of Plaintiff's injuries. Immediately following the incident, Plaintiff refused medical attention and there are no visible signs of injury on the video. Plaintiff, however, maintains that he experienced pain and that he was diagnosed with "whiplash-type" injuries as a result of the November 29, 2018 incident. ECF No. 62 at 9. Plaintiff submits health service requests from November and December of 2019, an MRI taken on September 6, 2019, and notes from a medical appointment on December 4, 2020. Plaintiff can, of course, provide lay testimony regarding any pain or symptoms he experienced. However, none of the records he submits show that his diagnosis was caused by the incident at hand. Plaintiff's medical notes from a December 2020 visit show that the onset and duration of his symptoms were two to three years prior. ECF No. 67-2 at 1. Three years prior to that visit would have been almost one year before Plaintiff's incident with Defendants. Further, as Defendants note, Plaintiff fails to mention a variety of other important factors relevant to his neck pain and injury, including pre-existing back pain and neck pain, a history of degenerative disc disease, a prior car accident, a prior cervical injury from jumping off the third floor of a building, and physical fights with other inmates. *See* ECF No. 73 at 9–10. Given this, the Court does not find that the record supports that Plaintiff's

lasting medical issues are causally related to Birdyshaw's and Wodack's actions on the date in question. As such and given the video evidence contradicting Plaintiff's assertion of serious injury, the Court finds that this factor does not weigh significantly in Plaintiff's favor. *See Cooper*, 2023 WL 6314644, at *11.

Finally, the Court considers whether Birdyshaw and Wodack made efforts to temper the severity of the force used. The video shows the officers repeatedly telling Plaintiff not to resist in an effort to calm him down. The video further shows that the officers appear calm and professional; the officers warn Plaintiff about being careful on the stairs in order to avoid injury. Plaintiff submits no evidence to show that the trained techniques used by Birdyshaw and Wodack were inappropriate. *See id.* As such, the Court finds that the fifth factor does not support a finding of excessive force.

Plaintiff relies on the 'blackout' portions of the videos that he argues must necessarily create a disputed issue of fact.[4] The Court disagrees. To begin, Plaintiff's argument fails to recognize that nine different videos of the incident exist; therefore, a nonvisible portion on one video does not mean that portion is not visible on another video. Plaintiff's own opposition brief does not even reference these blackouts and the effect they have on the full record. To the extent that there is a portion of the incident that was not caught on camera, the Court likens this case to the Seventh Circuit's reasoning in *Boyd,* where it affirmed the district court's finding of no excessive force despite certain portions of inconclusive video. *See* 621 F. App'x at 356. When reviewing the video record as a whole, the Court is

---

[4]Plaintiff's proposed findings of fact identify three instances where the cameras "go black." ECF No. 63 ¶ 22 (referencing Exhibits 1010 and 1012). Plaintiff does not even attempt to explain how these blacked-out portions correspond to the footage in the other videos.

satisfied that no reasonable juror could conclude that Defendants used excessive force against Plaintiff in a nonvisible portion of the videos given their "professional behavior" throughout the videos. *See id.*

In sum, the Court finds that no reasonable jury could find that Birdyshaw and Wodack used excessive force against Plaintiff. As such, the Court will accordingly grant summary judgment for Birdyshaw and Wodack.[5]

**4.     SANCTIONS**

The Court will not impose sanctions against Defendants. Woven into Plaintiff's summary judgment opposition brief is a request for the Court to sanction Defendants for several false statements in the declarations and underlying evidence supporting their motion for summary judgment. *See* ECF No. 62 at 9–12. Rather than seeking sanctions under Federal Rule of Civil Procedure 11 ("Rule 11"), Plaintiff instead seeks sanctions under the Court's inherent authority. *Id.* Defendants argue, and the Court agrees, that the motion should have instead been brought under Rule 11. *See In re Rimsat, Ltd.*, 212 F.3d 1039, 1048 (7th Cir. 2000) ("A sanctioning court should ordinarily rely on available authority conferred by statutes and procedural rules, rather than its inherent power. . . .").

Defendants first argue that the motion for sanctions must be denied because Plaintiffs failed to comply with Rule 11's requirements. Rule 11 provides that a motion for sanction "must be made separately from any other motion." It further requires that a motion cannot be filed "if the challenged paper, claim, defense, contention, or denial is withdrawn or

---

[5]Defendants also moved for summary judgment based on qualified immunity. ECF. No. 53 at 8. Because the Court grants summary judgment on the merits and finds no excessive force based on the undisputed facts, the Court need not reach the question of qualified immunity.

Case 2:21-cv-01058-JPS     Filed 09/16/24     Page 15 of 18     Document 75

appropriately corrected within 21 days after service [of the motion] or within another time the court sets." Fed. R. Civ. P. 11(c)(2) (commonly referred to as the "safe-harbor requirement"). The Seventh Circuit allows "substantial compliance" with this rule to suffice; however, it does not excuse a party from providing the full twenty-one days' notice before filing a motion. *See McGreal v. Village of Orland Park,* 928 F.3d 556, 559 (7th Cir. 2019), *cert. denied sub nom. DeRose v. Village of Orland Park, Illinois,* 140 S. Ct. 956 (2020). Here, Defendants provide—and Plaintiff does not dispute—that no notice was given prior to the request for sanctions.

However, even if Plaintiff had complied with Rule 11, the Court would still find that sanctions are not warranted. As described above, the parties disagree over many of the facts. Plaintiff takes issue with how Defendants characterize certain evidence and attempts to show how his interpretation of the video conflicts with Defendants' version of the facts. However, "[i]t is common in civil litigation for disputes like these to arise, and they are not generally viewed as sanctionable." *Cooper,* 2023 WL 6314644, at *16. The Court has considered the parties' factual disputes and makes its summary judgment decision based largely on the video evidence. Plaintiff has shown that he viewed the incident differently; he has not, however, shown that Defendants lied in their summary judgment materials. As such, Plaintiff's request for sanctions is denied.[6]

---

[6] Plaintiff's insinuation that defense counsel purposefully withheld one of the nine videos is also without merit. *See* ECF No. 65 at 1 n.1. Defendants explain that, in error, one video was not initially docketed, and counsel did not notice this error when filing summary judgment. ECF No. 71 ¶¶ 10, 15. Counsel for Plaintiff was provided all nine videos after appearing in the case. *Id.* ¶ 9.

**5. CONCLUSION**

For the reasons explained above, the Court finds that no reasonable juror could find that Defendants used excessive force against Plaintiff, and it will therefore grant Defendants' motion for summary judgment. The Court will accordingly dismiss Plaintiff's excessive force claim with prejudice, and with all claims now addressed, will dismiss this case in its entirety.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment, ECF No. 52, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment excessive force claim against Defendants Troy A. Pingel, John W. Birdyshaw, and Nicholas J. Wodack be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Defendants' motion to restrict, ECF No. 55, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of September, 2024.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.